## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF NEBRASKA.

## JULY TERM, 1883.

---

PRESENT:

HON. GEORGE B. LAKE, CHIEF JUSTICE.
"   AMASA COBB,   } JUDGES.
"   SAMUEL MAXWELL, }

---

GEORGE W. CLOTHER, PLAINTIFF, V. MICHAEL MAHER ET AL., DEFENDANTS.

1. **School District:** CONSOLIDATION AND DEBTS OF. Where one of several school districts, consolidated under sec. 1, subdivision XIV. of the act "to establish a system of public instruction," approved March 1st, 1881, was indebted on bonds previously issued for school purposes, upon such consolidation being effected the new district not only became invested with all property rights of the former, but also became answerable for its debts; and a tax for their payment was properly levied on all taxable property within the new district.

2. **Statute:** CONSTRUCTION OF. In construing a remedial statute three things must be considered, viz.: The old law, the mischief, and the remedy. Broom & Hadley's Commentaries (Am. Ed.), 76.

ORIGINAL application for injunction.

*Whitmoyer, Gerrard & Post,* for plaintiff.

*Charles A. Speice* and *John G. Higgins*, for defendants.

LAKE, CH. J.

This action was brought against the county commissioners and treasurer to enjoin the collection of certain taxes levied by the commissioners of Platte county for the payment of school district bonds. These bonds were issued July 1st, 1873, by school district No. 1 of Platte county, which then, and until March 1st, 1881, was one of the two school districts into which the city of Columbus was divided. No. 13 was the other district.

By virtue of sec. 1, subdivision XIV. of the act of the legislature, entitled, "An act to establish a system of public instruction for the state of Nebraska," approved March 1st, 1881 [Comp. Stat., Chap. 79], these two districts were consolidated, and became and have since been a single one, under the name and style of "The school district of Columbus," etc. By operation of this statute the new district took the title to all school buildings and other property, real and personal, owned by the other two districts.

It is not questioned by counsel for the plaintiff, nor could it be successfully, that the legislature had the power to make this consolidation and invest the new district with the property of the other two. Nor does it seem to be doubted that, in such case, in the absence of some different direction by the legislature, consistent with the rights of creditors, the new district is legally and equitably liable for the debts of the other two; that, succeeding as to their property, they succeed to their liabilities also. Such is the rule. *Mount Pleasant v. Beckwith*, 100 U. S., 514. *Blanchard et al. v. Bissell*, 11 Ohio State, 96. *Thompson v. Abbott et al.*, 61 Mo., 176.

But the ground taken, and which seems to be relied on chiefly, is, that although the new organization has succeeded as to all the property rights of the old ones, in view of sev-

eral provisions of statute bearing on the subject, these bonds are still the debts of district No. 1, and collectible only out of the property of the territory embraced within its boundaries at the time they were issued. This position is based chiefly on sections 13 and 14 of the act of February 26th, 1879, providing "for the issuing and payment of school district bonds." Comp. Stat., Chap. 79, subd. XV. The first of these sections directs that the means for the payment of such bonds shall be raised by a levy and collection of taxes "upon all the taxable property" in the "school district by which they were issued." Sec. 14 enacts: "That the phrase and expression 'school district,' as used in the preceding section, is hereby declared to mean, intend, and refer to the school district as it existed immediately prior to and at the time of the issuance of any bonds by said school district, including all lands and property and inhabitants comprised and contained in said school district at the time of the issuance of any bonds, and including all and any portions of said district subsequently separated from said district, whether by the formation of a new district or by any change of boundaries of said original district."

It is contended on behalf of the plaintiff that there is no conflict whatever between this section and the provisions under which these two districts were consolidated, and, therefore that the levy, on account of these bonds, ought to have been made only, as it nominally directs, upon the property in that portion of the new district which composed district No. 1. In short, the contention is, that this section, given its exact literal import, must govern in this matter. With this view, however, we find ourselves unable to agree.

In the first place, we think there is an irreconcilable conflict between the two statutes, and that there being no right of the holders of the bonds respecting their payment involved, but only that of the tax payers of the new district, in their relation to each other, the more recent statute

must be given what we deem to be its plain, obvious meaning, and the legislative intent, as gathered from a due consideration of all its parts.

Referring more particularly to the act of March 1st, 1881, we find that in addition to vesting the title to property of the old districts in the new, as we have seen, section 14 makes it the duty of the officers of the former to deliver "all property, funds, and papers intrusted to their care" to the officers of the latter, for its use and benefit.   Sec. 22 imposes on the officers of the new district the duty, in positive terms, of providing "for the payment of debts created by" the superseded districts, "in the erection of school houses, or for other school purposes;" and where such indebtedness is in the form of bonds, "the holder or holders thereof" are given the privilege of exchanging them for bonds of the new district "of like amount of the same tenor and effect as to payment of principal and interest as the bonds surrendered."   And sec. 28 provides: "That all moneys arising from any source whatever, which, under any prior act or acts of the legislature of this state, are payable to any school fund of any city of the state, or any moneys which are required to be set apart by the treasurer of any such city for the support and maintenance of any school heretofore organized therein, under any general or special law, shall, on and after the passage of this subdivision, be payable to the board of education, and shall be used only for the purposes specified in this subdivision." Comp. Stat., Chap. 79.

Giving due weight to these several provisions, and to the clause whereby the law under which the former districts existed as legal entities was wholly repealed, we are in no doubt that the intention of the legislature was to bestow upon the new district all of the property of the superseded ones, and to make it answerable for all their valid obligations.   This being so, the levy for the payment of the bonds in question was properly made on the property of the entire district.

Having reached the conclusion that sec. 14, above cited, has no application to this case, it may not be worth our while to give what we consider is the full extent of its operation. We may be justified in saying, however, that in no case could it hardly be given a full literal application. It is essentially a remedial statute. In the construction of such statutes, three things are to be considered; " the old law, the mischief, and the remedy." 1 Broom & Hadley's Commentaries (Am. ed.), 76. This particular provision in the act of February 26, 1879, was intended, probably, to avoid an embarrassment, which about that time began to be experienced in providing means for the payment of school district obligations, growing out of the subdivision of districts, after they had become largely indebted, until they were so reduced in size, and consequently in taxable property, as to be left without the means for making payment. This court had occasion to consider such a state of facts in the case of *The People, ex rel. Owen, v. School District No. 9 of Hamilton County*, not reported, but referred to approvingly in *The State, ex rel. Mitchell, v. School District No. 9 of York County*, 8 Neb., 92, and the remedy applied, in the absence of statutory provision, was, to require a levy co-extensive with the limits of the district as they were when the debt was contracted. And that, doubtless, was equitable. At the next session of the legislature after that decision was made, the principle of it was recognized in the enactment of the section in question, as a part of the law relative to school district bonds.

It must be conceded that, where this section is applicable, a strict, literal construction would permit of no deviation whatever in the levy of a tax from the boundary of the district as it was when the bonds were issued. Indeed, to conform strictly, the levy would have to include not only all the land then within the district, but also all other property, and the " inhabitants comprised and contained " therein as well; so that, if any owner of taxable personal

property residing in the district when the bonds were is-
sued, afterwards, and prior to the levy, removed therefrom
to another district, or county, taking with him all his ef-
fects, they would still be within the contemplation of the
letter of the statute, and the levy should include them.
Not only this, but if a stranger should establish his abode
in the district after the bonds were put forth, and become
a tax payer as to every other branch of the revenue, he could
not lawfully be included as one on their account. A con-
struction leading to such absurd results ought not to be
given, if it be possible to avoid it.

But, if such construction were the only one permissible,
the enforcement of the section to this extent would be ex-
ceedingly doubtful. The true principle of taxation—the
one enjoined by our constitution—is that of uniformity as
to persons and property within the particular district for
which the tax is imposed. " The legislature shall provide
such revenue as may be needful by levying a tax by valu-
ation, so that every person and corporation shall pay a tax
in proportion to the value of his, her, or its property
and franchises," etc. Constitution, art. IX., sec. 1. " It
is essential to all just taxation that it be levied with equal-
ity and uniformity." *Brewer Brick Co. v. Inhabitants of
Brewer,* 13 American Law Register (N. S.), 735. "A tax
is properly a charge apportioned among the people of a tax
district, so that each individual within its boundaries shall
pay his proportionate share of the public burdens." *Tur-
ner v. Althaus,* 6 Neb., 54. This rule of uniformity very
clearly would require that all taxable property within the
district when a levy is made, and only such, whether
brought there before or after the bonds were issued, be
taxed for their payment. And we have no idea that the
legislature intended otherwise in the enactment of the sec-
tion in question. Although not very happily expressed,
the design we think was merely to hold subsequently de-
tached territory for the payment of such bonds, but not to

exclude such as might be added to, nor property brought within the district afterwards.

The justice and propriety of this provision may well be doubted. Many reasons readily suggest themselves why in its operation it may be, and doubtless is, oppressive. To the writer hereof it seems a great and unwarrantable hardship to compel the people of territory taken from one district and given to another to contribute to the payment of the debts of both. That it would be much nearer the principles of justice and fair dealing, especially where no superior right of a creditor is involved, to make a proportionate part of the debt, under proper regulations, a charge upon the district to which the detached portion is given. This, however, is a matter within the province of the legisture. If there be a wrong in this particular, it is for that body to correct.

There is no equity in the plaintiff's case, and the action must be dismissed with costs.

JUDGMENT ACCORDINGLY.

THE other judges concur.