## TISDALE et al. v. ELDORADO INDEPENDENT SCHOOL DIST. et al. (No. 7044.)*

(Court of Civil Appeals of Texas. Austin. June 9, 1926. Rehearing Denied Oct. 13, 1926.)

1. **Schools and school districts** ⊂⇒41(2)—Legislature has power to reduce school district boundaries so as to place all outstanding bond indebtedness on remaining portion.

Legislature may reduce boundaries of school district having outstanding bond indebtedness so as to relieve portion segregated from debt as between it and old district, and place all of debt on remaining portion, without consent of voters there.

2. **Constitutional law** ⊂⇒143—Where legislative segregation act provided by presumption that old school district, benefited by bonds, should pay them, obligation of contract held not impaired.

Where legislative act did not attempt to relieve segregated portion of liability for bonded school debt, but provided by presumption that old district which received benefits of bonds should pay them, it did not impair obligation of contract.

3. **Schools and school districts** ⊂⇒110.

Since at time of tax levy for bonded school indebtedness property had been taken out of district, old school district *held* not entitled to such taxes.

Appeal from District Court, Schleicher County; J. F. Sutton, Judge.

Application by Joe Tisdale and others for a temporary injunction against the Eldorado Independent School District and others. From an order denying the injunction, plaintiffs appeal. Reversed and rendered.

Hill, Neill & Hill, of San Angelo, for appellants.

Collins, Jackson & Sedberry, J. A. Thomas, and G. R. Lewis, all of San Angelo, for appellees.

BLAIR, J. The appellants applied for a temporary injunction to restrain the school board of Eldorado independent school district, the tax assessor, and collector of Schleicher county from exacting certain school taxes levied and assessed against their property, alleging that it constituted no part of the school district, and was not subject to its jurisdiction for taxation. The appeal is from the order denying the injunction.

The Eldorado independent school district was created April 3, 1907, by a special act of the Legislature. It voted and sold, August 1, 1909, schoolhouse bonds aggregating $20,000, of which some $9,000 remain outstanding and unpaid. Additional schoolhouse bonds, aggregating $45,000, were voted February 19, 1925, and sold February 23, 1925. Thereafter, March 6, 1925, by special legislative enactment, the district was redefined so as to exclude about 150 sections of land owned by the three appellants and probably 25 others, most of whom reside on their land so segregated from the old district. The 150 sections are sparsely settled, and consist in the main of ranch lands, and only one child from the segregated portion attends the Eldorado school. The county school board and commissioner's court of Schleicher county created three separate common school districts out of the 150 sections after its segregation from the old district, and each of them has voted a local tax with which to maintain schools. The segregation act is silent with reference to the bond indebtedness, or with reference to any adjustment or settlement of property rights or debts as between the segregated portion and the old district, but merely redefines the district so as to exclude from its territory the 150 sections of land. The buildings and all improvements for which the bonds were issued are situated in the Eldorado independent school district as redefined by the segregating act. April 4, 1925, the trustees of the Eldorado independent school district met and levied a tax of 40 cents on the $100 valuation for school maintenance, a tax of 10 cents to pay interest and provide a sinking fund for the 1909 bond issue, and a tax of 25 cents to pay interest and provide a sinking fund for the 1925 bond issue, and appointed the county tax assessor and collector, respectively, and ordered them to assess and collect these taxes against the 150 sections of land and personal property located thereon which had been segregated and excluded from the old district by the special act of March 6, 1925. The assessor made the assessments on a supplemental roll, which the commissioner's court approved, and the collector is collecting and demanding of appellants and the others similarly situated payment of these taxes.

[1] The main question presented under these facts is whether the Legislature has the power to reduce by special act the territorial boundaries of an independent school district having an outstanding bond indebtedness so as to relieve the portion segregated from the debt as between it and the old district, and to place it all upon the remaining portion in which the improvements for which the bonds were issued are located, without its consent, and without providing for an election whereby the voters of the remaining district or territory may determine whether they will assume the additional burden. We have concluded that the Legislature does have that

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted December 15, 1926.

power. The authority 35 Cyc. 850, lays down the following as the general rule with reference to this question:

"In the absence of some statutory provision to the contrary, the general rule is that, when a part of the territory of a school district is separated from it by annexation to another district, or by the creation of a new district, the old district retaining its organization, such old district retains all its property, powers, rights, and privileges, and continues to be responsible for all its debts and liabilities."

See, also, cases cited in notes 95 and 96, which support the text quoted.

In the case of Johnson v. City of San Diego, it was held that—

"When the act of segregation is silent as to the common property, and common debts, the old corporation retains all the property within its new boundaries, and is charged with the payment of all of the debts." 109 Cal. 475, 42 P. 250, 30 L. R. A. 180, and notes and cases there cited.

This rule has the universal approval of all courts, and, while it relates to municipalities by analogy, it is applicable here, since the dominion of the Legislature over the creation, alteration, or existence of school districts and municipalities is derived from the same source, sovereignty, and its general power with reference to these matters is the same. 35 Cyc. 832, 833. This authority holds that—

"The power to organize, establish, or lay off new school districts, or to divide, change the boundaries, or otherwise alter existing districts is vested primarily in the Legislature, which may act without the assent of the inhabitants of the affected territory." State v. Norwood, 24 Tex. Civ. App. 24, 57 S. W. 875; Swenson v. McLaren, 2 Tex. Civ. App. 331, 21 S. W. 300; State v. Buchanan, 37 Tex. Civ. App. 325, 83 S. W. 723.

Our state Constitution (article 7, § 3) provides:

"And the Legislature may also provide for the formation of school districts by general or special law, without the local notice."

The law, as announced by all authorities, that the Legislature may create, divide, or extend the territorial boundaries of school districts or municipalities arises from the very nature of the creation of these corporations or quasi corporations, and is established under the well-settled doctrine that such corporations have no vested rights in the powers conferred for the purposes for which they came into existence; or, as Dillon on Mun. Corp (4th Ed.) § 63, says:

"Legislative acts respecting the political and governmental powers of municipal corporations not being in the nature of contracts, the provisions thereof may be changed at pleasure where the constitutional rights of creditors and others are not invaded."

[2] If it can be said that appellees have any concern in the question, their contention that the special act is unconstitutional because it impairs the obligation of the district's contracts with reference to its outstanding bond indebtedness is without merit. The act could have impaired the contracts only by detaching from the district against which the bonds existed such an amount of territory, as to leave insufficient property liable for the payment of the debts within the district's taxing limitations; and by further forgiving and relieving the segregated portion of its pro rata of the indebtedness as against the creditors. The act does not attempt to relieve the segregated portion of its liability for the bond debt, but simply provides by presumption that as between the segregated portion and the old district as redefined the old district which received all the benefits of the bonds should pay them. It is undisputed that sufficient property was left in the Eldorado independent school district as redefined by the act to more than pay the bond indebtedness within its taxing limitations. If it should develop in the future that sufficient property was not left in the old district to pay the bond indebtedness according to the contracts, then the bondholders would have the right to proceed against the detached territory for any balance due, not to exceed its pro rata or share of such indebtedness. Manahan v. Adams County, 77 Neb. 829, 110 N. W. 860; Id., 77 Neb. 832, 111 N. W. 800; Clother v. Maher, 15 Neb. 1, 16 N. W. 902.

The detached territory has been made by lawful authority into common school districts with duly elected boards of trustees against whom the bondholders may proceed, if necessary, in a suit against all districts having within their boundaries any of the property against which the bonds were issued, and under our blended system of law and equity the right of all parties may be adjudicated. This we think is in keeping with the general rule that school districts are not dissolved by being divided, but retain and receive all the rights and powers incident to corporations of that nature. It is also in keeping with the well-established doctrine that the Legislature is vested with general and plenary power to deal with political subdivisions of the government as it deems wise, and that its acts of segregation or division of school districts should only be declared void, where the acts themselves undertake by specific terms to relieve a portion of any district of an outstanding bond obligation, for, says Cooley:

"Restraints on the legislative power of control must be found in the Constitution of the state, or they must rest alone in the legislative discretion. If the legislative action in these cases operates injuriously to the municipalities or to individuals, the remedy is not with the courts. The courts have no power to interfere, and the people must be looked to, to right, through the ballot box, all these wrongs." Cooley, Const. Lim. (6th Ed.) p. 229.

[3] Appellees insist, however, that, if the act be held valid, the old district is still entitled to the taxes involved, because the property was included within its limits on January 1, 1925, and its right to tax the property was fixed as of that date. In the case of Megargel Independent School District v. Blewett (Tex. Civ. App.) 278 S. W. 516, it is held that property taken into a school district after January 1st is subject to taxation for school purposes for the full year in said district, when the owner was not required to pay taxes to the former district. The taxes in question were neither levied nor assessed against the 150 sections of land when the special act detached them from the old district, but were later incorporated in a supplemental roll. The detached territory has been incorporated into common school districts, and each has authorized a levy of a local maintenance tax for the same year. If the Eldorado district is authorized to levy the tax for the current year 1925, then the new districts created from the segregated portions cannot levy a tax for the same year on the same property, and can only levy a tax for the year 1926, which would not be collectable until October of that year. That being true, the new districts, although legally created, and their children deprived of the benefits of schooling in the old district, cannot maintain themselves by local taxes for almost two years after their creation. We submit that such was not the intention of the Legislature. At the time the old district levied and ordered assessed the taxes involved, the property had been taken out of the district, and the status of the property at that time should at least control this particular case.

The judgment of the trial court will be reversed, and judgment here rendered granting to appellants the injunctive relief prayed for.

Reversed and rendered.