FELIX J. McSHANE, JR., APPELLEE, v. DOUGLAS COUNTY, APPELLANT.

FILED JULY 14, 1914. No. 18,260.

1. **Statutes:** CONSTITUTIONALITY: FEEDING PRISONERS. That part of chapter 53, laws 1907, which provides for letting contract to feed prisoners in counties having more than 100,000 population was *held* unconstitutional and void in *State v. McShane*, 93 Neb. 46. That provision being an inducement to the passage of the act, and not separable, the whole act is unconstitutional.

2. **Counties:** ALLOWANCE FOR FEEDING PRISONERS. It is the duty of the county board to allow a reasonable compensation to the sheriff for feeding prisoners confined in the county jail.

Rehearing of case reported in 95 Neb. 699. *Judgment of district court reversed.*

SEDGWICK, J.

After the former opinion in this case (95 Neb. 699) a rehearing was allowed, and the case has been again exhaustively briefed and argued.

Prior to the act of 1907 the statute fixed the fees of sheriffs in detail, and added a proviso: "For boarding prisoners per day, not exceeding seventy-five cents per day, nor more than three and one-half dollars per week, when the prisoners are confined more than six days." Comp. St. 1905, ch. 28, sec. 5. This part of the proviso was considered by this court as early as *Lancaster County v. Hoagland,* 8 Neb. 36. It was then held to leave the matter to the discretion of the county board to pay a reasonable amount for feeding the prisoners, and the law remained with this construction until the act of 1907. The act of 1907 (laws 1907, ch. 53) reenacted the detailed provision for the fees of sheriffs in general without change. In lieu of the general proviso for boarding prisoners, above quoted, it contained the following: "For boarding prisoners fifty cents per day, provided, that in counties having by the last preceding national or state census a population in excess of one hundred thousand (100,000) the sheriff shall receive for boarding prisoners, including jail supplies, thirty-nine cents per prisoner per day until January 1, 1908, and it shall be the duty of the board of county commissioners to advertise on or before December 1, 1907, and annually thereafter, for proposals for furnishing meals to prisoners in the county jail according to specifications set forth in said advertisement and on or before the first day of January in each year to contract with the lowest and best bidder for feeding prisoners in the county jail." Thus the only changes made in the section were to require quarterly reports of fees and provide absolutely 50 cents a day for the state at large, instead of the maximum compensation, and to make a special provision for counties having a population in excess of 100,000 (Doug-

las county). The provision that the feeding of the prisoners in Douglas county should be let by contract to the lowest and best bidder was held unconstitutional in *State v. McShane,* 93 Neb. 46. This cause of action arose before the revision of 1913 took effect. It seems clear that the provision of this statute relating to Douglas county and fixing the amount to be paid the sheriff for boarding prisoners in that county was an inducement to the act. The section amended by the act covers all of the fees of the sheriff. It is a very long section and occupies nearly a page of the Compiled Statutes (Comp. St. 1905, ch. 28, sec. 5) and no other change is made in this long section by the amendment except the changes above indicated. It is entirely manifest that the legislature did not intend by this amendment to provide that 50 cents a day should be paid to the sheriff in Douglas county. There are two substantial reasons for saying that the legislature did not so intend, either one of which would sufficiently show that the provision in regard to Douglas county was an inducement for the passage of the act: First, the section provides that from the time of the taking effect of the act the amount to be paid in Douglas county shall be 39 cents a day until the 1st day of the next succeeding January, and in the meantime the county commissioners shall make preparations for letting the contract in January, thereby effectually precluding the sheriff from getting 50 cents a day in Douglas county for any time after the act took effect; second, it also seems clear that the provision for letting to the lowest bidder was the most important part of the whole amendment and the principal inducement for the passage of the act.

The history of the enactment of the statute of 1907 indicates it. Senate File No. 319 was a bill for "An act to amend section 5, of chapter 28, of the Compiled Statutes of Nebraska for the year 1905, and to repeal said section." The only change made in the amended section was to provide for the filing by the sheriff of quarterly reports of fees collected by him. It was referred to the judiciary committee, and it reported an amendment chang-

ing the cost for boarding prisoners from "not exceeding 75 cents per day" to 50 cents per day. When it was first considered in the committee of the whole senate it was amended by adding the provision that in counties having 100,000 population the feeding of prisoners should be let by the county after January 1, 1908, and in the meantime compensation in such counties should be 39 cents a day. The house concurred in this important change in the bill, and added some minor amendments, which were rejected by a conference committee, and the bill was passed and approved by the governor with the provision that in the most important counties of the state, so far as population is concerned, the feeding of prisoners should be let by contract.

It cannot be supposed that the legislature would have enacted a general statute providing for the feeding of prisoners and omit from its provisions the largest counties of the state. The inducement to the act was to provide for this service in all the counties of the state, and the provision for counties having 100,000 population was a part of that inducement. The wording of the statute itself shows this. "Fifty cents per day, provided (except)" that for Douglas county a different provision is made. When that provision was held to be unconstitutional the whole act was annulled. The former statute is in effect, which has been decided by this court, to leave the matter to the discretion of the county board to fix a reasonable compensation. Unfortunately, however, it was stated in the opinion in *State v. McShane, supra,* that "after eliminating the unconstitutional portion of it, the remainder of the act is complete in itself, and capable of enforcement." This statement was wholly unnecessary in the case, and should be disregarded. However, we considered that the subsequent case of *McShane v. State,* 93 Neb. 54, was a reaffirmance of the statement that the remainder of the act could be enforced. This latter opinion would seem upon first reading to have that meaning, but upon careful examination it is not a reaffirmance of the dictum in the former opinion. In the latter case the opinion

says: "The record contains a stipulation that the question presented for determination in this case is identical with the one recently decided by this court in *State v. McShane,* 93 Neb. 46." This is not saying that it is in fact the same, but the question in the latter case was considered to be the same as in the former case, acting on the stipulation that it should be so considered. It seems that in former decisions this court had made a distinction between state prisoners and county prisoners, and the latter opinion related to state prisoners only, and not county prisoners. It was, perhaps erroneously, considered that this distinction still existed, and consequently the question as to the constitutionality of that part of the act of 1907 which provided 50 cents a day for feeding county prisoners was not considered in the opinion. The district court had decided that McShane was "bound by the terms of the contract between the county board of Douglas county and Gardipee & Flanagan," and this court held that, that contract being void, the plaintiff was not bound by the terms of the contract. The opinion, however, contains a repetition of the dictum of the former case in these words: "He was clearly entitled to the compensation mentioned in that part of chapter 53 remaining in force, by which it is declared that the sheriff shall receive the sum of 50 cents a day for furnishining meals to such prisoner." 93 Neb. 54. It is beyond question that the legislature intended that in Douglas county the sheriff should only have 39 cents a day until the county board could put in force the provision for letting the contract to the lowest bidder, and that was the reason for fixing the compensation at 50 cents a day in the other counties of the state, and the legislature never intended so to fix the compensation at 50 cents a day in Douglas county.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

ROSE, J., not sitting.

BARNES, J., dissents.

HAMER, J., dissenting.

I want to make the inquiry of any and all the members of this court who give the majority opinion their support whether they think an act which has been declared unconstitutional by this court in a case where it had jurisdiction to determine the matter ever becomes a constitutional and valid act without being reenacted by the legislature as the constitution of the state provides a new act shall be created? By the opinion which is presented as the majority opinion the members of this court are asked to say that this may be done. What is now section 3539 of the Revised Statutes of 1913 was, in its original form, wiped out as unconstitutional by the decision of this court in *Lancaster County v. Hoagland,* 8 Neb. 36. This section has never since been reenacted. Therefore, it has never been born again. Once unconstitutional, always unconstitutional. That section was put in Cobbey's statute, but that does not make it law unless you gentlemen resolve to put everything out of sight and out of recollection, and in addition you destroy the case of *Lancaster County v. Hoagland,* 8 Neb. 36, so that no one may see it.

I think we should hesitate to fix the fees of the sheriff for keeping prisoners in the jail. That should be done by the legislature. We are a court. We have delivered three opinions touching the matter under consideration. The opinions are in *State v. McShane,* 93 Neb. 46, *McShane v. State,* 93 Neb. 54, and *McShane v. Douglas County,* 95 Neb. 699. Believing that these opinions are correct, I think that they should be adhered to. We have no right to overrule them without a reason, and we are not offered any reason. Judge Barnes prepared the two former opinions, and Judge Letton the latter.

Section 2441 of the Revised Statutes of 1913 is the live section. Section 3539 is the dead section. It was possible and natural to amend the live section. Douglas county undertook to get an amendment through that would specially apply to Douglas county. That special amendment was to let the contract for boarding the prisoners in the

jail to the lowest bidder. The decisions of this court in the cases cited knocked out that effort of Douglas county. It was made to apply to those "counties having by the last preceding national or state census a population in excess of 100,000." As Douglas county is the only county of that kind in the state, of course it applied to Douglas county. The only trouble about it was that it was not contemplated by the section sought to be amended that there should be a public letting whereby the boarding of the prisoners would be taken from the sheriff. The only difficulty was that there was an error in the method by which it was attempted to be done. The other counties have a rate which gives the sheriff 50 cents a day for boarding the prisoners. Because of the unfortunate attempt to get in the Douglas county amendment, the law is just the same for Douglas county as it is for any other county. If the amendment had been offered in the right way, it might have been done, but it was attempted to be done in the wrong way, and therefore it failed.

By chapter 53, laws 1907, it was sought to amend what is now section 2441 of the Revised Statutes of 1913 so that it would read: "Where there are prisoners confined in the county jail, $1.50 per day shall be allowed the sheriff as jailer. For boarding prisoners 50 cents per day, provided, that in counties having by the last preceding national or state census a population in excess of 100,000 the sheriff shall receive for boarding prisoners, including jail supplies, 39 cents per prisoner per day until January 1, 1908." And then comes the Douglas county provision providing for advertising for bids and letting the contract to "the lowest and best bidder." Of course this last provision goes out under the decisions. Then the act reads: "Provided further, that the sheriff shall, on the first Tuesday in January, April, July and October of each year, make a report to the board of county commisioners or supervisors under oath showing the different items of fees except mileage collected or earned, from whom, at what time and for what service, and the total amount of fees collected or earned by such officers since the last re-

port, and also the amount collected or earned for the current year, and he shall then pay all fees earned to the county treasurer." It is directly said by the syllabus in *State v. McShane,* 93 Neb. 46: "So much of chapter 53, laws 1907, as authorizes the county boards of counties having more than 100,000 inhabitants to contract with the lowest and best bidder for feeding prisoners in the county jail is violative of the provisions of section 11, art. III of the constitution." The opinion was delivered in a case brought to compel McShane, as the sheriff of Douglas county, to let *Gardipee & Flanagan* into the *jail for the purpose of furnishing meals to the prisoners.* The district court allowed the mandamus, and this court reversed its judgment and dismissed the case. In *McShane v. State,* 93 Neb. 54, there was an appeal from the judgment of the district court for Lancaster county sustaining the action of the auditor of public accounts in disallowing a portion of a claim presented by McShane to the auditor for allowance against the state. The claim was for "board of prisoners from date of conviction, August 27, 1912, to August 30, 1912, 4 days, at 50 cents a day, $2."

The foregoing claim was allowed at 19 cents a day, and from the disallowance of a part of the item above set forth the plaintiff appealed to the district court and the state filed a demurrer to the plaintiff's petition, which was sustained, and thereupon judgment was rendered against the plaintiff dismissing the action, and from the judgment the plaintiff prosecuted an appeal. It will be observed that this last case was to compel payment for the keep of state prisoners. The amount allowed was only 19 cents a day. This court said: "The provision in chapter 53, laws 1907, by which the legislature attempted to authorize the county commissioners in counties having more than 100,000 inhabitants to let contracts for feeding prisoners in the county jail to the lowest and best bidder, is unconstitutional and void." It is said in the opinion: "It follows, therefore, that the plaintiff was not bound by the terms of the contract between the county board of Douglas county and Gardipee & Flanagan, which was upheld by the district

court; and, plaintiff having furnished the meals in question to a state's prisoner, which fact was admitted by the demurrer, he was clearly entitled to the compensation mentioned in that part of chapter 53 remaining in force, by which it is declared that the sheriff shall receive the sum of 50 cents a day for furnishing meals to such a prisoner." The judgment of the district court was reversed and the cause remanded for further proceedings. A glance at the section as it is left amended with the unconstitutional part stricken out shows that, omitting the last proviso concerning a report to the county treasurer and the payment of fees to him, the section reads: "For boarding prisoners, 50 cents per day, provided, that in counties having by the last preceding national or state census a population in excess of 100,000 the sheriff shall receive for board-ing prisoners, including jail supplies, 39 cents per prisoner per day until January 1, 1908." As there is a limitation as to the time for the payment of 39 cents a day which fixes January 1, 1908, as *the end of that rate*, it follows that there is no rate provided except the 50 cents a day mentioned at the commencement of the section. It must be clear that the opinions cited fixed the rate at 50 cents a day.

In *McShane v. Douglas County*, 95 Neb. 699, this court said in the syllabus: "The question presented here was argued and decided in *McShane v. State*, 93 Neb. 54. The legislature had been in session since the decision, and, having made no change in the amendment to the statute, the construction given therein is adhered to." In the body of the opinion there is a discussion of the two decisions of this court above cited, and the court said: "These excerpts from the brief clearly show that the questions raised in this case were expressly raised and decided in the former case, and that, if any relief is to come, it must come through the legislature. The legislature has been in session since the decision in the former cases, and has taken no steps to change the rule of the decisions. We are not inclined to interfere with their prerogative."

In section 2285 of the report of the commission for re-
vision of the general laws of Nebraska, it is said: "The
several sheriffs shall charge and collect fees as follows,
to wit: Serving *capias* with commitment or bail bond and
return, one dollar.   *   *   *   Where there are prisoners
confined in the county jail, $1.50 per day shall be allowed
the sheriff as jailer. *For boarding prisoners, 50 cents per
day; Provided,* it shall be the duty of the county board to
advertise on or before December, annually, for proposals
for furnishing meals to prisoners in the county jail accord-
ing to specifications set forth in said advertisement, and
on or before the first day of January in each year to con-
tract with the lowest and best bidder for feeding prisoners
in the county jail; *Provided, further,* the sheriff shall, on
the first Tuesday in January, April, July and October of
each year, make a report to the county board under oath
showing the different items of fees except mileage col-
lected or earned, from whom, at what time, and for what
service, and the total amount of fees collected or earned
by such officer since the last report and also the amount
collected or earned for the current year, and he shall then
pay all fees earned to the county treasurer."

The report of the above commission was adopted and ap-
proved February 14, 1913, and "made of force as the Re-
vised Statutes of the state of Nebraska of 1913." Laws
1913, ch. 3 (House Roll No. 1). Both of the opinions
of this court prepared by Judge Barnes (*State v. Mc-
Shane,* 93 Neb. 46; *McShane v. State,* 93 Neb. 54) were
filed January 31, 1913, and, therefore, when the report of
the commission was adopted with the unconstitutional
part eliminated from the act by these decisions so that it
would read, "for boarding prisoners 50 cents per day pro-
vided, that in counties having by the last preceding na-
tional or state census a population in excess of 100,000
the sheriff shall receive for boarding prisoners, including
jail supplies, 39 cents per prisoner per day until January
1, 1908," as there is a limitation as to time for the pay-
ment of 39 cents a day—it fixes January 1, 1908, as the

end of that rate—it follows that there is no rate provided
except the 50 cents a day mentioned at the commencement
of the section.

The initiation of the report of the commission begins
with chapter 166, laws 1911. The second section of that act
provides that the said commissioners in performing their
duties shall omit "obsolete or repealed matter and such *as
has been declared to be invalid by the courts having juris-
diction thereover.*" And the commission is expressly for-
bidden to make any change "which may have the
effect of giving a different construction," etc. When these
commissioners were expressly forbidden to put in their re-
port any matter that had been declared unconstitutional,
can they put it in anyway? It would seem that if they
were forbidden to put it in by the act which initiated their
existence and provided for it, then if they do put it in it
is as if they had *undertaken to vitalize mere rubbish.*

The report above referred to is not the "Revised Statutes
of Nebraska." It was, and is, an antecedent volume. It
was intended to gather up the *laws of the state.* The "Re-
vised Statutes of 1913" is another book. It is provided by
House Roll No. 875, entitled "An act to provide for the
editing, annotating, indexing, preparing of manuscript and
publication of the general laws of the state as a statute;
for the authentication, the sale and distribution thereof,
and to repeal sections 6987, 6992, 6994 and 6999x3 of Cob-
bey's Annotated Statutes of 1911 (C. S., ch. 95, art. 2,
sec. 4; art. 3, sec. 4; art. 4, sec. 4) ; to provide an appro-
priation therefor and to declare an emergency." Laws
1913, ch. 241.

Section 1 of the act continues the commission for eight
months for the purpose of editing and preparing the laws
of Nebraska for publication as statutes to be known and
cited as the "Revised Statutes of Nebraska for 1913."

Section 2 of that act provides that the Revised Statutes
shall be published in the same form and on the same plan
as the report of the commission, and "shall contain the
matter of such report with all acts of a general nature
enacted by the thirty-third session of the legislature, omit-

ting therefrom all matter that may have been repealed by this session of the legislature and substitute amendatory acts or parts thereof for those amended."

Section 3 of the act provides for the incorporation of amendments, and that "all laws of a general nature that shall be in force at the conclusion of this session of the legislature shall be incorporated in the Revised Statutes."

Section 7 of the act provides: "All acts of a general nature, as revised and reported to the thirty-third session of the legislature by the commission for the revision of the laws, as soon as such report shall be approved and adopted by the legislature, shall be construed as a continuation of such laws and not as new enactments."

Section 8 provides that the members of the commission shall collate and arrange "the Revised Statutes for publication as contemplated by this act." They are then directed "to supply any apparent omissions, mistakes or inaccuracies and to correct errors or mistakes in number or reference to sections, articles or chapters, or parts of any acts or laws in the report."

Section 2441, Rev. St. 1913 reads: "Where there are prisoners confined in the county jail, $1.50 per day shall be allowed the sheriff as jailer. For boarding prisoners, 50 cents per day."

Then comes the provision that the sheriff shall make a report on the first Tuesday in January, April, July and October of each year showing the different items of *fees* collected, except mileage, and the total amount collected, and shall pay all the fees earned to the county treasurer. Before leaving the section under consideration, it is well to note that the provision contained in the report of the commission touching the letting of the contract to the lowest bidder is left out. It was no doubt left out because it had been held unconstitutional. It was eliminated by the decisions first above quoted, and it was left out of the Revised Statutes by the commission and by the legislature because it had been eliminated. Is there any one who will say that that provision is in force notwithstanding the fact that it has been left out? As section 3539 of the

Revised Statutes of 1913 is still unconstitutional, it offers no serious obstacle to the enforcement of section 2441 of the same statutes after taking out the unconstitutional part relating to Douglas county. If the commission omitted to include in its report or in the Revised Statutes of 1913 any valid statute or part of a statute, would that statute be invalid because the commission left it out? Would it not still be the law? Can the commission by including unlawful and unconstitutional statutes in its report reenact them as a part of the law of this state without consulting the people and their representative agencies? The law that was held unconstitutional certainly cannot be made valid and constitutional by including it in the report of this commission. This commission had a right to codify and classify. It did not have a right to legislate or to interpret. The Revised Statutes of 1913 are valid in so far as they codify the laws and classify them. *The three commissioners cannot make the law.*

"A title, 'An act to revise the code of civil procedure of the state of California,' does not sufficiently comply with a constitutional provision that every act shall embrace but one subject, which subject shall be expressed in its title, at least, where the act deals with a vast variety of subjects, many of which are totally distinct from each other, many of them having no relation to civil procedure." *Lewis v. Dunne,* 55 L. R. A. 833 (134 Cal. 291).

The legislature cannot by adopting the report of this commission add to or subtract from the laws as they stood before the commission made its report. The Nebraska constitution, by section 11, art. III, provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in its title. And no law shall be amended unless the new act contain the section or sections so amended and the section or sections so amended shall be repealed." That the legislature appoints a commission and that commission makes a report does not abrogate the constitutional provision regarding the requisites necessary to pass valid legislation. Every safeguard thrown around the passage of legislation would be de-

stroyed if a commission could be appointed for the purpose of classifying and codifying our laws *as they stand* and with special instructions to leave our laws declared to be unconstitutional by the courts and it then goes ahead and inserts whatever it sees fit and omits whatever it dislikes, and changes the statute in every way at its own whim and caprice. Suppose these gentlemen are desirous of applying their experiments to the commonwealth and they incorporate their peculiar views in the report which they make. This would do away with constitutional government. This would mean anarchy.

If we go to the statute of 1913, the title to the act contains a plurality of subjects. It reads: "An act to approve, adopt and make of force the general laws, the code of civil procedure, and the code of criminal procedure." Will it be seriously urged that the mistakes of the commission and the blunders of the legislature shall give the people something that the commission never contemplated and that the legislature never understood? The commission under the authority given to it might rewrite a section, might rearrange a chapter, might gather together in one place the various statutory provisions regarding a particular subject, and, these expressing the meaning as previously agreed upon before the commission existed, it would permit the use of such a statute. But there must be no change of a substantial character in the language used or a different construction than that heretofore given by the court. In that event the original section passed by the legislature and interpreted by the court would bind as it was written and intended by the legislature and as interpreted by the court.

In *Nicholson v. Mobile & M. R. Co.*, 49 Ala. 205, the court held that, where the codifier was forbidden to change "the substance or meaning of any statute to be included therein," the original statute might be consulted, and that it would control the language of the revision.

In *State v. Stroschein*, 99 Minn. 248, the supreme court of Minnesota said: "The rules for the interpretation of revised statutes or codes resolve themselves into one in-

quiry, applicable alike to the construction of all legislative enactments, viz, the legislative intent. If the language of the revised statutes be plain and free from doubt, the will of the lawmakers must be ascertained therefrom, unaided by prior statutes on the subject." Should we compel the appellee to hunt for another rule of law after we have solemnly announced one by three decisions?

The majority opinion is reached upon the theory that the provision to let the contract is not separable from the other parts of the act. That is not a proper foundation. When something foreign to the subject under consideration is gathered up and brought into the act, *the foreign matter is always separable* and can be eliminated from the act without injury to its proper purpose. It should be remembered that the purpose of the constitutional provision is to prevent surreptitious legislation. It is to prevent the legislator from *stealing something into the bill* of which his associates are not aware. These provisions are in the constitutions of nearly or quite all of the states. What the adroit and dishonest legislator would do would be to prepare a bill with five or six sections in it about some matter concerning which it would be proper to legislate, and he would reflect the subject matter in the bill and then he would put in a vicious section entirely foreign to the matter under consideration in the five or six sections and in the title. It is uniformly held that, where this provision is violated by an act, a part of which is not expressed in the title, such part of the act as is broader than the title, being in conflict with the constitution, is absolutely void, and, as such part is not a valid expression of the legislative will, it fails. Part of such an act, being a valid expression of the legislative will, must stand, and be enforced, if separable from the void portion and capable of enforcement apart from that which is void, unless the parts of the act, of the body, are so intimately related, in substance and purpose, that it cannot be said when the purpose is contemplated that the legislature would have acted and passed the act but for the void portion. Thus, suppose an act should be entitled "A bill for 'An act to

amend section 10, of chapter 20, of the Compiled Statutes for the year 1901, and to repeal said section,' " and suppose that section 10 of chapter 20 relates to the government of *townships,* and contains a complete scheme for the government of townships, and that the amendatory act contains five paragraphs all dealing with the government of *townships,* and a sixth paragraph dealing with the government of *cities of 5,000 population,* no notice of this last mentioned subject is given by the title, for section 10 of chapter 20 does not deal with *cities,* but with *townships.* The paragraph is therefore void—unconstitutional. But must the whole act fail? Five of these paragraphs deal with the townships, a subject entirely disassociated with cities, and containing a complete scheme for their government expressed in an act properly entitled. Must these five paragraphs fail? The five paragraphs, being valid, complete and enforceable without the sixth, stand as a *valid expression of the legislative authority on the subject of townships.* These things are to be determined from the *act itself, contemporaneous legislation, matters of general common knowledge,* indeed by all these things which a court may take into consideration in construing an act of doubtful meaning. *Redell v. Moores,* 63 Neb. 219.

And because the purpose of the constitutional provision is to prevent surreptitious legislation, its provisions are not violated in upholding such parts of an act partly void as are reflected in the title, if such parts are complete and capable of enforcement, embraced in the scheme or plan distinct and separate from the void portions. Then they should be permitted to stand, because such parts, being reflected in the title, receive legislative attention, while those parts *unnoticed by the title are forbidden consideration.*

The question first and last is, as with all questions touching the constitution: What did the legislature intend? What was the object and purpose of the act? The act as originally introduced was to fix the fees of all sheriffs throughout the state. It was properly entitled to accomplish this purpose "An act to amend section 5, of chapter 28, of the Compiled Statutes of Nebraska for the year

1905, and to repeal said section." *This section dealt entirely with fees.* The bill fixed the charge for feeding prisoners with certainty, and provided for a report from the sheriffs of fees and payment by the sheriffs of fees collected into the treasury. As part of the same plan a bill was introduced which became a law at the same session. This bill put the sheriff's office on a salary. It was the purpose of both acts to put the sheriff's office on a salary. Both acts were a part of the same general plan. The proviso affecting the powers of the county board to let the contract to the lowest bidder, and which is the objectionable and unconstitutional feature reflected by the title, was not a part of the general plan, and was incorporated into the act while the bill was on its passage by way of an amendment. The general plan was broad and comprehensive and state-wide, the unconstitutional part is separable from it in plan and in purpose and insignificant in scope, and ought not to defeat the portion of the concededly constitutional parts of the act under the uncertain rule which names it an inducement to the passage of the act. Under the majority opinion no rule is laid down by which the unconstitutional part can be held to be the moving power to occasion the bill to be adopted. The thing which the legislature undertook to do under the title of "fees" was to provide that the county might let out the contract to anybody for feeding the prisoners. Under an amendment which related only to the section concerning fees nobody would be apprised of the fact that the bill contemplated a matter utterly foreign to the subject of "fees." Perhaps it would be best to say that, if the thing sought to be done is *foreign* to the matter *under consideration,* the legislature were *not* thinking about it, because it was *not in the title,* and not in the *subject matter of the bill,* and therefore there was nothing which particularly called the attention of the legislature to it. If a rule shall be applied which puts out of consideration matter that is in no way suggested by the title or by the section amended, then we have some sort of guide. *We are not guessing at it.* I think that such a rule as this may be inferred from

the cases. If we apply such a rule as this to the instant case, we will say that the proposition to let the contract to the lowest bidder was wholly foreign to the consideration of the subject concerning what should be paid the sheriff per day for feeding the prisoners. That part of the act which seems to me to be the inducement for its passage provides that the sheriff *shall make a report* to the board of county commissioners on the first Tuesday in January, April, July and October of each year; that in this report he shall *show* the *different* items of fees collected or earned, and from *whom*, and for *what service*, and "also the amount collected or earned for the current year, and he shall then pay all fees earned to the county treasurer." It may be remembered that there was an effort to put many officers on salaries instead of on fees, and this effort was along that line. It was not unconstitutional, however, for the reason that it related to the *fees* of the sheriff and what should be done with them, and was therefore clearly within the purview of section 5, ch. 28, Comp. St. 1905, which it undertook to amend. It should be remembered that this provision for making the report and for paying over the fees to the county treasurer was a new provision. It was a very urgent provision under the view taken by the introducer of the bill and his supporters, and a most important matter. Laws 1907, ch. 53, sec. 1, p. 226.

# CASES DETERMINED

## IN THE

# SUPREME COURT OF NEBRASKA

## SEPTEMBER TERM, 1914.