MOELLER, MCPHERRIN & JUDD, PLAINTIFF, v. WILLIAM H. SMITH, STATE TAX COMMISSIONER, ET AL., DEFENDANTS.

FILED JUNE 18, 1934. No. 29255.

*Shotwell, Monsky, Grodinsky & Vance,* for plaintiff.

*Paul F. Good, Attorney General, Daniel Stubbs* and *Henry J. Beal,* for defendants.

*Jessen & Dierks, Robert G. Simmons, Hall, Cline & Williams* and *Clarence T. Spier, amici curiæ.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LIVINGSTON, District Judge.

PAINE, J.

This is an original action, brought in this court under the uniform declaratory judgments act, as approved April 24, 1929, and found in chapter 75, Laws 1929, sections 20-21,140 to 20-21,155, Comp. St. 1929.

It was instituted, upon leave granted by this court, by Moeller, McPherrin & Judd, a copartnership, of Omaha, against William H. Smith, state tax commissioner, and Sam K. Greenleaf, county assessor of Douglas county, and an order for service required defendants to answer within ten days.

The petition recites in detail certain personal property, such as common stock, notes, book accounts, bank deposits, owned by the plaintiff, and subject to taxation. It then sets out in detail the title and contents of House Roll No. 9, being chapter 156, Laws 1933, and alleges that many taxpayer corporations, partnerships, and individuals in the state occupy a similar position to that of the plain-

tiff herein, and to permit the officials of Douglas county, and of all the other counties in our state, to assess and levy such illegal taxes upon personal property, in conformity with the provisions of said House Roll No. 9, will create a multiplicity of actions to secure the removal of the clouds upon the title and property so taxed; that every county in the state is contracting and undergoing great expense to secure the returns based upon the provisions of the said House Roll No. 9, and will undergo additional expense in computing and recording the returns made under the provisions of House Roll No. 9; that it is of great public interest that the constitutionality of said House Roll No. 9 be passed upon by this court at the earliest possible moment in order that the plaintiff and other persons, partnerships, and corporations, similarly situated in the state of Nebraska, be saved from irreparable harm and injury that will be suffered by them unless the relief prayed is granted.

The plaintiff claims that, as a taxpayer whose rights, status, or other legal relations are affected by House Roll No. 9, it is entitled, under the uniform declaratory judgments act, to have determined in this action the validity, force, and effect of said law, and to obtain a declaration of its rights, status, or other legal relations thereunder. Plaintiff prays that this court decree that House Roll No. 9 is unconstitutional, null and void, and of no force and effect.

The answer of William H. Smith was filed by the attorney general, admitting certain paragraphs of the petition, and admitting that defendant will proceed to assess the property of plaintiff, and all others similarly situated, in accordance with House Roll No. 9, and that such assessment will be used by the taxing officials in making the levy for taxation purposes for the year 1934, and denies all allegations not admitted.

The plaintiff thereupon filed a motion, setting forth that the defendant by his answer admitted all of the essential allegations of fact set out in the petition, and moved the

court for judgment on the pleadings, as prayed in plaintiff's petition.

This action relates to the public revenue of the state, and also of all of its governmental subdivisions. The answer filed by the defendants leaves, as the only issue to be decided by this court, the constitutionality of said House Roll No. 9.

This court has held that the uniform declaratory judgments act was applicable to actions wherein there was an actual controversy with justiciable issues presented by proper parties, such as appear in this case. *Lynn v. Kearney County,* 121 Neb. 122. In *Muskegon Heights v. Danigelis,* 253 Mich. 260, two of the principal taxpayers were drafted to defend an action brought by the city under the declaratory judgments act. See, also, *Zoercher v. Agler,* 202 Ind. 214.

All real and personal property was required to be taxed, uniformly as to rate and as to valuation, prior to the new Constitution of 1920. *State v. Osborn,* 60 Neb. 415. By an amendment in 1920, the Constitution was changed to read: "But taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises and taxes uniform as to class may be levied by valuation upon all other property." Const. art. VIII, sec. 1.

This provision was obviously intended to separate tangible from intangible property for the purpose of taxation, and would permit a different rate of taxation upon tangibles. The high taxation on tangible property offered inducement to allow intangibles to be covered up and escape any taxation, so the constitutional convention endeavored to permit a lower taxation on intangibles.

The 1921 legislature promptly took advantage of this constitutional enactment to define tangible property as that having physical existence, excluding money, and to declare that all other personal property, including money, was intangible personal property, and fixed different rates of taxation for the two kinds. Comp. St. 1929, sec. 77-104.

In 1925 the legislature provided for the taxation of all

money and bank deposits at one rate, 2.5 mills, and class B intangibles at a higher rate. Laws 1925, ch. 165. The legislature of 1929 raised class B intangibles to 8 mills. Laws 1929, ch. 168.

House Roll No. 9 raises taxation on money to 5 mills, and provides that all other personal property, except bank shares, shall be taxed at the same rate as real property. Many of the members of the 1933 legislature desired to repeal the intangible tax law then in existence, but when such a bill was before them, it failed of passage; then followed certain amendments and modifications designed to change the intangible tax law, and the result is House Roll No. 9, now under consideration. Upon its passage, several members refused to support it on the ground that it was not a repeal of the intangible tax law, and the governor permitted the act to become a law without his signature thereon.

These observations are not made for the purpose of inquiring into the proper exercise of legislative power, for this court assumes that legislative discretion was properly exercised, and no criticism thereof is intended.

Objection is first made to House Roll No. 9 on the ground that the act is broader than the title thereto. The provisions of our Constitution relative to the title of an act are to be liberally construed, and if the provisions of an act are clearly comprehended within the objects and purposes of the act as expressed in the title, then the act is to be held constitutional.

Section 14, art. III of the Constitution provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title." Among the reasons for this rule is that it is only fair and honest to give the members of the legislature, as well as taxpayers and the public generally, the real subject of the legislation that is under consideration. Other reasons are given in *Conservative Savings & Loan Ass'n v. Anderson,* 116 Neb. 627.

Now, let us examine the title to House Roll No. 9. It is ostensibly an act to repeal 12 sections of Comp. St.

1929, and, in addition, to repeal two sections of Comp. St. Supp. 1931, all of which relate to intangible property tax, and this clearly indicates that the intangible property tax provisions, as set out in those 14 sections, are wiped out. The title then provides that four sections of Comp. St. 1929 are to be amended to provide for the taxation of banks, building and loan associations, insurance and surety companies, fire insurance companies, together with the taxation of foreign corporations doing business in Nebraska. However, a careful examination of the act itself shows that House Roll No. 9 does anything but carry out these simple provisions as expressed in the title, and that it legislates upon other topics not embraced in the title.

Section 2 of the act provides that corporations shall pay a tax assessed upon its shares of stock. Such stock certificates belong to the stockholders individually, and in the title of the act there is no mention made of a right to tax the stockholders of a corporation. This provision provides that, when the corporation has paid the tax assessed upon its shares of capital stock outstanding, it shall have a lien upon such shares for the tax paid, except in the case of shares of stock in a building and loan association, upon which shares the tax shall be assessed to, and paid by, the individual owners thereof. No one has pointed out where, in the title of this act, the individual owners of shares of stock in building and loan associations, or in other corporations, are notified in the title that the act will affect their holdings and tax their property as individuals.

Section 4 provides a similar tax upon the individual stockholders of every bank.

Section 5 provides that every owner, whether as individual, agent, trustee, executor, administrator, guardian, or in any other representative capacity, must list all intangible property called in the act, class 2, tangible property, for taxation. A most careful reading of the title of this act gives no hint of any such law as this to follow.

Section 6 of the act provides that money deposited in the banks shall be taxed. This, of course, includes the deposits of all individuals as such, and this also is open to the objection that there is nothing in the title of the act from which one might infer that a specific tax is to be levied upon the money of an individual.

Section 8 of the act provides that the local agent of fire insurance companies shall render a statement of the business done during the preceding calendar year, with the premiums collected, and that such gross receipts shall be assessed and taxed, and that such agent is personally liable for the tax of such fire insurance companies. Where is there any provision in the title of this bill that in any way indicates that the bill will provide a personal liability upon fire insurance agents for the taxes due from their companies under this bill? It certainly is not mentioned in the title of the act, and we cannot see any provision under which it could be contemplated.

It is contended that the provision in section 9 of the act, which requires certain foreign corporations to furnish a list of their Nebraska stockholders to the tax commissioner, is not within the title, which only provides for the taxation of such corporations.

Section 11 corresponds to section 77-712, Comp. St. 1929, which was enacted as a section of Senate File No. 65 in 1921. Near the end of the title of that act appear these words, "and to provide penalties for the violation thereof," Laws 1921, ch. 133, but in House Roll No. 9 appears no such statement in the title.

It is contended that, even if a title does not refer to a penalty provision, such a provision, punishing those who violate the provisions of the act, might still be proper if germane to the act. *Rosenbloom v. State,* 64 Neb. 342; *Westbrook v. State,* 120 Neb. 625. However, the penalty provision in House Roll No. 9 goes far beyond that, and applies to persons, firms, or corporations who aid and abet a violation of the act; whereas, the title relates to corporations, and this goes beyond the holding in *State*

*v. Power,* 63 Neb. 496, and is clearly without the constitutional provision and void.

The title of House Roll No. 9 shows that section 77-707, Comp. St. 1929, is one of the sections repealed, as set out in the title, and there is nothing in the title, or in the act itself, to indicate that this section 77-707 has been reenacted in full elsewhere in the bill as section 11, and it is contended that the portion which is reenacted, after the title states that it has been repealed, is unconstitutional and void. In our opinion, that part of the title of House Roll No. 9 which reads, generally, to provide for the taxation of banks, domestic building and loan associations, loan and trust, loan, trust, and investment companies, together with insurance companies, surety companies, and foreign corporations, is not broad enough to include the imposition of a penalty upon individual persons who may counsel or advise a taxpayer, and no penalty can validly be imposed other than those which relate to or are included in or suggested by the bill. *Birdhead v. State,* 105 Neb. 296. It has been held by this court many times that if any section is the inducement for the passage of an act, and that section is unconstitutional, then the entire act failed. It is certainly possible that some members of the legislature had in mind this provision, punishing by both fine and imprisonment individuals who may counsel or advise taxpayers wrongly in reference thereto, as an inducement for their favorable action on the bill. If section 11 was an inducement for the legislature to pass the entire act, then, as this provision falls, the entire act would fall, notwithstanding the provisions of section 12.

Section 77-104, Comp. St. 1929, which House Roll No. 9 purports to amend, provided that tangible property included all personal property possessing a physical existence, but excluding money, and then defined intangible property as all other personal property, including money. Section 2 of House Roll No. 9 attempts to amend this by providing that tangible property shall consist of two classes,

and that class 1 shall be all personal property possessing a physical existence, and then provides that class 2 of tangible property shall include stocks, notes, securities of foreign countries, accounts, judgments, liens of any kind, bonds, and all demands for labor, or other valuable thing, due or to become due. This introduces a new query, which is: May a legislature, under the guise of defining a word, do so with a definition which contravenes our Constitution, and which is not true or legal in fact? Class 2 of tangible property, as defined in House Roll No. 9, is intangible property as defined by the leading dictionaries. Webster's New International Dictionary: "Intangible. Not tangible; incapable of being touched or perceived by touch; impalpable; imperceptible." "Tangible. 1. Capable of being touched; also, perceptible to the touch; tactile; palpable. 2. Capable of being possessed or realized; readily apprehensible by the mind; real; substantial; evident."

Can the legislature define and designate as tangible that which is, in fact and in truth, intangible? It may be admitted that the legislature has power to define words used by it, but is this an unlimited power, or is it subject to a reasonable construction? Tangible is the direct opposite of intangible; and can the legislature, under the guise of calling it two separate classes of tangible property, include all intangible property under class 2 of tangible property? In our opinion, there is a limit to the legislature's power to nullify and circumvent constitutional provisions by putting an arbitrary, but improper and unfounded, definition upon a certain word.

The Constitution of Nebraska clearly provides for two kinds of personal property for purposes of taxation, and the legislature has abrogated one of these by the device of calling it a class under the other. The legislature could not directly blot out a provision of the Constitution; has it not, by House Roll No. 9, attempted to do it indirectly?

If the Constitution gives one definition of a legal term, and a statute another, it is the duty of a court to declare that the Constitution governs.

Classifications for taxation purposes must be based on a real and substantial difference, having a reasonable relation to the subject of the particular legislation. *State Bank v. Endres,* 109 Neb. 753.

Without extending this opinion beyond proper bounds, it is impossible to discuss all of the attacks made upon each section of House Roll No. 9. We have tried to show that many of the sections, as herein set out, were clearly unconstitutional. Our attention is called by the attorney general to the saving clause in section 12, providing that, if any part of the act is held unconstitutional, such decision shall not affect the validity of the remaining portions of the act.

Mr. Justice Brandeis, in *Dorchy v. Kansas,* 264 U. S. 286, said: "A declaration in a statute that it shall be conclusively presumed the legislature would have passed the statute without any part of it found invalid by the courts, provides a rule which may aid in determining the legislative intent, but is not an inexorable command."

When sections of a legislative act are unconstitutional, and such sections were an inducement to the passage of an act in its entirety, then the entire act is void, notwithstanding a saving clause therein.

One of the purposes of the act was to establish a new plan for the taxation of intangibles by the simple device of calling such personal property tangible. The various sections are so interwoven with that one theory that it would be impossible to leave a few sections standing by themselves. Such a finding would leave the law, under which the state tax commissioner and county assessors must proceed, in such a chaotic condition that it would be absolutely impracticable and unenforceable, and doubtless lawsuits would arise which would hamper and delay the collection of the needed revenues to run our state and each of the subdivisions thereunder.

We hold that House Roll No. 9 is void, among other reasons, because not all of its objects are expressed in its title, and the act is very much broader than its title.

Amendments have been made in this act which are in no way germane to the subject-matter of the sections amended.

Where the title states that the subject of an act is to amend one section of a former statute, the act cannot be extended to the amendment of other sections. *State v. Tibbets,* 52 Neb. 228.

Where the title of a bill is to repeal certain sections of a statute, the legislature cannot by said bill reenact the substance of the sections so declared repealed in the title, nor can amendments be made to the sections declared to be repealed. *Trumble v. Trumble,* 37 Neb. 340.

It is admitted that the penalty provided in section 11 of the act is not mentioned in the title of the act. This, we have held, is not a defect unless the penalty covers the punishment of matters not indicated nor within the contemplation of anything set out in the title of the act, which is true of section 11 herein.

Support for the findings herein may be found in *Hubbell Bank v. Bryan,* 124 Neb. 51; *State v. Ord State Bank,* 117 Neb. 189; *Central Nat. Bank v. Sutherland,* 113 Neb. 126; *State Bank v. Endres,* 109 Neb. 753; *State v. Junkin,* 85 Neb. 1; *Williams v. Standard Oil Co.,* 278 U. S. 235; *State v. Dawson County Irrigation Co.,* 125 Neb. 836; *Day v. Metropolitan Utilities District,* 115 Neb. 711; *Ives v. Norris,* 13 Neb. 252; *State v. Poynter,* 59 Neb. 417; *State v. Painter,* 117 Neb. 42; *Elmen v. State Board of Equalization and Assessment,* 120 Neb. 141; *Webster v. City of Hastings,* 59 Neb. 563; *Millard v. Roberts,* 202 U. S. 429; *McShane v. Douglas County,* 96 Neb. 664; *Wayne County v. Steele,* 121 Neb. 438; *State v. Bauman,* 126 Neb. 566; *City Trust Co. v. Douglas County,* 101 Neb. 792; Cooley, Constitutional Limitations (6th ed.) ch. 7; 6 R. C. L. 70, sec. 67.

It is the declaratory judgment and decree that House Roll No. 9, Laws 1933, ch. 156, is unconstitutional and void, and of no force and effect, thus leaving the former statutes on taxation in full force and effect, as they existed

prior to the passage of House Roll No. 9.

JUDGMENT FOR PLAINTIFF.

GOOD and EBERLY, JJ., concur in the result.