DEPARTMENT OF HEALTH, STATE OF NEBRASKA, ET AL.,
APPELLANTS, V. MANOR CARE, INC., DOING BUSINESS AS MANOR
CARE OF LINCOLN, APPELLEE.

465 N.W.2d 764

Filed February 22, 1991.   No. 88-928.

Robert M. Spire, Attorney General, and Marilyn B. Hutchinson for appellant Department of Health.

Robert L. Lepp, of McGill, Parsonage & Lanphier, P.C.; John R. Holdenried and Barbara E. Person, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim; and Charles M. Pallesen, Jr., and Thomas C. Huston, of Cline, Williams, Wright, Johnson & Oldfather, for appellants Milder Manor et al.

Charles V. Sederstrom, of Erickson & Sederstrom, P.C., for appellee.

BOSLAUGH, WHITE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Pursuant to the Nebraska Health Care Certificate of Need Act, Neb. Rev. Stat. §§ 71-5801 et seq. (Reissue 1986), Manor Care, Inc., doing business as Manor Care of Lincoln, filed its application with the Department of Health (Department) for a certificate of need, namely, authorization for construction and operation of a 120-bed nursing home in Lincoln, Lancaster County, Nebraska.

The Certificate of Need Review Committee adopted the Department's findings and conclusions, see § 71-5838(4), and

denied the application of Manor Care, which appealed to the Certificate of Need Appeal Panel, see §§ 71-5862 and 71-5865. At this juncture, five potential competitors of Manor Care's intervened and contended that the decision of the Certificate of Need Review Committee should be upheld. The stipulated issues for the Certificate of Need Appeal Panel were whether Manor Care had met its burden to prove that (1) in Lancaster County "there is an unmet need for long term care services," a requirement under 182 Neb. Admin. Code, ch. 2, § 005.01A (1983); (2) any need is "consistent with the need projections in the [certificate of need] regulations and in the current State Health Plan or, if there is an inconsistency between the need projections in those two documents . . . that the need is consistent with such document having priority in accordance with 182 NAC 2.005.01B"; (3) all "alternatives for meeting any unmet need" have been identified and that Manor Care's proposal is either "the least costly alternative for meeting any unmet need" or "is the most effective alternative for meeting any unmet need," requirements under 182 Neb. Admin. Code, ch. 2, §§ 005.02A1 and 005.02A2 (1983); (4) any increased cost or charges attributable to Manor Care's proposed project "are justified because of any unmet need," which is required by 182 Neb. Admin. Code, ch. 2, § 005.02B (1983); (5) Manor Care's "proposed project is financially feasible," as required by 182 Neb. Admin. Code, ch. 2, § 005.02C (1983); (6) Manor Care's "proposed project is consistent with the utilization requirements and projections of need in the [certificate of need] regulations and in the current State Health Plan," which is required under 182 Neb. Admin. Code, ch. 2, § 005.02E1 (1983); and (7) Manor Care's proposed project either "fosters competition and increases the range of choices available to consumers and payers" or that "the proposed project optimizes sharing and minimizes unnecessary duplication of long-term care services," required by 182 Neb. Admin. Code, ch. 2, § 005.02F (1983). Disposing of the stipulated questions, the appeal panel reversed the decision of the review committee and granted Manor Care a certificate of need.

In February 1988, pursuant to § 71-5866, the Department and Manor Care's competitors appealed to the district court for

Lancaster County, which affirmed the decision of the appeal panel and refused to stay the issuance of the certificate of need.

## ASSIGNMENTS OF ERROR

In their appeal to this court, the appellants contend that (1) the evidence does not sustain the appeal panel's decision; (2) "[t]he Appeal Panel erred in refusing to consider evidence of newly converted and newly authorized (but unconstructed) beds in calculating the long-term care bed supply for 1990," brief for appellant objectors at 7; and (3) the district court erred in denying the Department's request for a stay of the issuance of a certificate of need to Manor Care.

## STANDARD OF REVIEW

Judicial review of a decision concerning a certificate of need under the Nebraska Health Care Certificate of Need Act is governed by the Administrative Procedure Act. § 71-5866.

Since proceedings for judicial review in this case were filed in the district court before July 1, 1989, see, Neb. Rev. Stat. §§ 84-917(5)(a) and 84-918 (Cum. Supp. 1990) of the Administrative Procedure Act, this court's standard of review is: In an appeal to the Supreme Court from an administrative agency's decision, the Supreme Court, pursuant to § 84-918, tries factual questions de novo on the record and reaches a conclusion independent of the conclusion reached by the administrative agency, provided, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the administrative agency heard and observed the witnesses and accepted one version of the facts rather than another. *Department of Health v. Omaha Associates*, 232 Neb. 516, 441 N.W.2d 579 (1989). See, § 84-918; *Department of Health v. Grand Island Health Care*, 223 Neb. 587, 391 N.W.2d 582 (1986); *Department of Health v. Columbia West Corp.*, 227 Neb. 836, 420 N.W.2d 314 (1988).

## THE FACTS

Manor Care has many health care facilities in several states, excluding Nebraska, and applied for a Nebraska certificate of need regarding a 120-bed skilled- and intermediate-care nursing

center to accept both medicare and medicaid recipients. Manor Care's proposed facility will be located in Lancaster County, will emphasize rehabilitation, and will offer a 30-bed specialized unit for victims of Alzheimer's disease and similar conditions. The estimated cost is $3,610,000, with an anticipated completion date of July 1989.

## APPLICABLE REQUIREMENTS AND CRITERIA FOR ISSUANCE OF A CERTIFICATE OF NEED

The requirements and criteria concerning Manor Care's application are found in 182 Neb. Admin. Code, ch. 2, § 005 (1983):

005 REVIEW CRITERIA. The applicant bears the burden of demonstrating in its application that the proposal satisfies all of the review criteria in this section which are appropriate and significant to the proposal in order to be granted a certificate of need.

005.01 The Need for Services.

005.01A. The applicant must establish that there is an unmet need for health care services for a specific population.

005.01A1 A need exists when additional services for health care are essential to make high-quality health care available and accessible to all citizens of the state.

005.01A2 Under this part 005.01A, the population in need and the health care services which are needed must be identified, and the need of that population for the identified services must be established. The need which must be established under this part 005.01A is the need for diagnostic, treatment, rehabilitation, or maintenance services, not facilities or equipment. Facilities or equipment for providing the needed services must be identified under subsection 005.02 below. The population in need of services must be identified by the applicant both numerically and geographically in terms of Nebraska counties and the metropolitan areas, but applicant's service area will be determined with emphasis on referral patterns and travel time and without strict observance of geographical or political boundaries. For applicants

which establish that they provide a substantial portion of their services or resources to individuals who reside outside the immediate or adjacent health service areas (which entities may include medical and other health professions schools, multidisciplinary clinics and specialty centers), the population in need of services shall include the proportion of individuals in special patient groups and out-of-area population groups to whom the applicant provides services.

. . . .

005.01B The need established under part 005.01A above must be consistent with the need projections in section 006 of these regulations (182 NAC 2), and with those in the state health plan most recently adopted under section 1524(c)(2)(A) of P.L. 93-641, 42 U.S.C. 300m-3(c)(A), and on file with the Secretary of State, each of which is hereinafter referred to as a document. Projections in section 006 of these regulations shall take priority over those in the state health plan in the case of conflicts between those documents. Exceptions to the requirement of consistency with the projections in the document having priority shall be made when justification is shown by a preponderance of the evidence.

005.02 The Project Proposed for Meeting the Need.

005.02A Alternatives.

005.02A1 The applicant must identify all the alternatives which could satisfy the need established under part 005.01A above, and describe their relative merits. The proposed project must be discussed along with the other alternatives, and sharing among facilities must be considered as a possible alternative.

005.02A2 The applicant must demonstrate that the proposed project is the least costly of the alternatives for meeting the need established under part 005.01A above, or if it is not the least costly, that it is the most effective alternative for meeting such need. In determining which alternative is the least costly, consideration shall include (but without limitation to) the following: the total cost of the project; charges to all consumers and payers, including

government reimbursement programs; the effect of the proposed means of financing on consumers and payers considered as a whole; and, in the case of construction projects (including remodeling), the design, methods, and materials of construction and the long-term energy costs for the project. The most effective alternative is the alternative which makes high-quality health care available and accessible to the greatest number of people in need of the services established as needed under part 005.01A above, maximizes the effectiveness of expenditures made for health care, minimizes unnecessary duplication of facilities and services, encourages development of appropriate alternative methods of delivering health care, and promotes wherever appropriate a more competitive health care delivery system.

005.02B Cost.

005.02B1 Any increase in costs or charges (to any class of payers or to all payers) resulting from the proposed project must be justified by the needs of the population established under part 005.01A above which will be met by the project. In estimating increases in costs or charges which will result from the proposed project, capital costs, operating costs, projected utilization of the proposed services, and any other factors bearing on future costs or charges shall be considered.

005.02B2 Increases in costs may be justified in part where improvements or innovations in the financing and delivery of health services will foster competition and promote quality assurance and cost effectiveness for consumers and payers.

005.02C Financial Feasibility.

005.02C1 The resources and proposed means of financing the proposed project must in fact be available.

005.02C2 It must be reasonably certain that the proposed project will be financially feasible for the period of life of the assets.

005.02D Continuity and Quality.

005.02D1 The proposed project must be coordinated with the existing health care system in a manner that

assures continuity of care including a succession of levels of service.

005.02D2 Ancillary or support services necessary to operate and maintain the proposed services under high standards of quality must be available or arranged.

005.02D3 It must be reasonably certain that the proposed services will be provided to the population in need on a continuous basis for the period of life of the assets.

005.02D4 The proposed project must be designed to provide or support high quality care. The quality of care provided by the applicant in the past may be considered in determining whether high quality care will be provided by the proposed project.

005.02E Impact on the Health Care Delivery System.

005.02E1 The proposed project must be consistent with the utilization requirements and the projections of need for the specific services proposed, which are contained in section 006 of these regulations and in the state health plan most recently adopted under section 1524(c)(2)(A) of P.L. 93-641, 42 U.S.C. 300m-3(c)(A), and on file with the Secretary of State. Requirements or projections in section 006 of these regulations shall take priority over those in the state health plan in the case of conflicts between those documents. Exceptions to the requirements or projections in the document having priority shall be made when justification is shown by a preponderance of the evidence.

005.02E2 If the applicant has a long-range development plan, the applicant must demonstrate that the proposed project is part of that plan and is consistent with other parts of that plan.

005.02E3 The proposed project must provide access for and contribute to meeting the health-related needs of medically underserved groups in its service area, particularly low-income persons, racial and ethnic minorities, women, handicapped persons, and the elderly.

005.02E4 In the case of a reduction or elimination of a service, including the relocation of a facility or service, the needs of the population presently served must be

adequately met by another facility or service, or by other arrangements.

005.02E5 If the proposed services are to be available in a limited number of facilities, health professional training programs in the area must have access to the services if necessary for training purposes.

005.02F Competition/Sharing.

005.02F1 Except as provided in subparts 005.02F2 and 005.02F3 below, the proposed project must increase the range of choices available to consumers and third-party payers with respect to the price and use of services, and must have the effect of fostering price competition among providers of health services.

005.02F2 In the case of leases or acquisitions of existing health care facilities, except as provided in subpart 005.02F3 below, the proposed lease or acquisition must not have the effect of reducing price competition among providers.

005.02F3 Where it is demonstrated that competition would not serve to promote quality assurance and cost effectiveness, the proposed project must optimize sharing and minimize unnecessary duplication in the health care delivery system.

## THE NEED FOR SERVICES

Since the Department's regulations allow an applicant to identify the "population in need," see § 005.01A2, in proceedings before the appeal panel, Manor Care identified Lancaster County as the "population in need" of its health services. By stipulation, an initial issue was whether Manor Care's facility satisfied "an unmet need for long term care services *in Lancaster County . . . ."* (Emphasis supplied.) We construe this stipulation as a factual admission that Manor Care's proposed service area is Lancaster County, but we do not construe "service area" to mean "[h]ealth service areas or subareas" under 182 Neb. Admin. Code, ch. 2, § 002.02A (1983).

The appellants seek to enlarge Manor Care's proposed service area to include "a 30 mile radius around the City of

Lincoln. This service area would include all of Lancaster County, plus portions of Saunders, Seward, Saline, Gage, Otoe, and Cass Counties." Brief for appellant objectors at 23-24. Appellants argue that Manor Care's service area should be enlarged because a substantial number of Lancaster County residents have left the county to reside in nursing homes located in neighboring counties. Rather than demonstrating that Manor Care will serve persons outside Lancaster County, appellants' argument is more persuasive that Manor Care's proposed service area should be accepted and retained rather than enlarged. On the other hand, information that many residents from surrounding counties are moving, or have moved, to Lancaster County for nursing home care might evidence a need to enlarge Manor Care's service area. After reviewing the record, we find that Manor Care's proposed service area is Lancaster County.

In the present case, the primary dispute involves a determination of the long-term-bed need in Lancaster County. 182 Neb. Admin. Code, ch.2, §§ 006.09 et seq. (1983) provide:

006.09 Long-Term Care Beds (Skilled Nursing Facility and Intermediate Care Facility Beds, Excluding ICF-MR Beds).

006.09A The combined occupancy of long-term care beds in the applicant's service area must be 90 percent or greater before long-term care beds may be added.

006.09B A system of alternative services, including either home health services, home aide/homemaker services, or an adult day care center, must be accessible to a majority of the population in the service area of the proposed project before long-term care beds may be added.

006.09C Rural needs and local differences shall be recognized by using the age-gender group needs of the population in any applicant's service area identified under subpart 005.01A2 above. No long-term care beds may be added if the number of beds in the applicant's service area exceeds the need for that area determined by aggregating the bed needs estimated for each sex and age group from the following methodology:

$$\text{Long-Term Bed Need} = \frac{\text{Population} \times \text{Utilization Rate Goal}}{\text{Minimum Occupancy Rate Goal}}$$

The Department's regulations provide:

006.09C1 The population includes the total population of the applicant's service area, disaggregated by age (0-44, 45-64, 65-74, 75-84, 85 + ) and sex.

006.09C2 The utilization rate is the number of long-term care residents per 1000 persons. The utilization rate goal for each sex and age group is as follows:

| Age-Sex | | Utilization Rate Goal |
|---------|--------|----------------------|
| 0-44 | Female | 0.10 |
| | Male | 0.11 |
| 5[sic]-64 | Female | 2.84 |
| | Male | 3.00 |
| 65-74 | Female | 14.87 |
| | Male | 13.82 |
| 75-84 | Female | 69.52 |
| | Male | 47.35 |
| 85 + | Female | 247.81 |
| | Male | 173.25 |

006.09C3 The minimum occupancy rate goal is 90 percent, the goal for the ratio of the total number of patient days to the total annual available bed days.

At the appeal panel hearing, the Department supplied information that the projected number of long-term-care residents in Lancaster County for 1990 was 1,437, to which a factor of .9 is applied, resulting in a long-term-care need of 1,597 nursing home beds. As of 1987, there were 1,477 available beds. Deducting 1,477 (available beds in Lancaster County) from 1,597 (projected need) leaves 120 beds which will be needed for long-term care of Lancaster County residents.

The appellants argue that the number of existing beds in Lancaster County should include 28 beds which Bethphage Residential Care Center was recertifying and 50 beds in a proposed nursing home at Waverly, in Lancaster County. The state regulations fail to provide a method for calculating "existing beds." See §§ 005 and 006. In *Department of Health v. Grand Island Health Care*, 223 Neb. 587, 598, 391 N.W.2d 582, 589 (1986), we stated that "[t]he mere filing of a notice of

intent [to apply for a certificate of need] does not, of course, indicate that the facility will be built." In our factual determinations, we have taken an approach that "existing beds" are only those beds currently available.

There is no evidence that Bethphage's recertified 28 beds were available for use. Further, when the appeal panel reviewed Manor Care's application, the administrative process was just beginning for determination whether the proposed Waverly nursing home was entitled to a certificate of need. Administrative and judicial review are two of many contingencies involved in determining whether a nursing home may be built and operated. Accordingly, we find that there were 1,477 existing and available beds in Lancaster County.

Thus, we conclude that there is a long-term need of 120 nursing home beds in Lancaster County.

## CONSISTENCY OF NEED PROJECTIONS

The current state health plan and regulations pertaining to a certificate of need yield substantially different projections. However, projections in conformity with the Department's regulations take priority over the state health plan. § 005.01B. During oral argument in this appeal, the parties acknowledged that the certificate of need regulations applied; hence, the Department's regulations apply in accord with § 005.01B to determine consistency under the Department's certificate of need regulations. Manor Care's need projection is based on the regulations pertaining to a certificate of need, and the appellee's need projection, therefore, is consistent with the need projection under the regulations pertaining to a certificate of need.

## IDENTIFIED ALTERNATIVES

Manor Care identified several alternatives for meeting any unmet long-term bed need, including addition of beds to existing facilities, conversion of excess hospital capacity, provision for less restrictive service alternatives, and sharing of services.

## LEAST COSTLY ALTERNATIVE

Appellants argue that increasing the bed capacity of existing

facilities is a more cost-efficient way of satisfying the long-term bed need in Lancaster County. However, according to the proposal for a 10-bed addition at Homestead Nursing Home, the cost per bed is $95,000, while Manor Care projects a cost per bed of $30,000. Hence, Manor Care has supplied information that its proposed project is a cost-efficient means to satisfy the long-term bed need in Lancaster County.

### JUSTIFICATION FOR ANY INCREASE IN COST

Dr. Lewis Price considered the construction cost of Manor Care's proposed 120-bed nursing home, cost of operation, and projected occupancy rates and concluded that a patient's daily fee would be $54.20, as compared to the average Lincoln-area fee of $54.05. Thus, Manor Care can meet the 120-bed need with a new facility at a cost of 15 cents more than the present daily fee. Moreover, the nominal fee increase is justified by considerations that Manor Care will foster competition, increase the range of choices available to patients, and promote cost-effectiveness for consumers and payers, as discussed below.

### FINANCIAL FEASIBILITY

Manor Care, which has 140 nursing homes in many states, has financed, constructed, and operated nursing home facilities for 27 years and has sufficient resources available for the proposed construction and operation of a nursing home in Lincoln, Nebraska.

Considering our determination that there is a long-term-care bed need in Lancaster County, we accept Manor Care's income projections, which forecast a positive net income by the second year of operations, and conclude that Manor Care has demonstrated financial feasibility for its proposed project.

### CONSISTENCY BETWEEN THE PROPOSED PROJECT AND THE NEED

Manor Care's proposed 120-bed facility is consistent with a projected need of 120 beds determined in accordance with the Department's regulations pertaining to a certificate of need.

### COMPETITION

Section 005.02F1 provides that "the proposed project must

increase the range of choices available to consumers and third-party payers with respect to the price and use of services, and must have the effect of fostering price competition among providers of health services." Manor Care's proposed Alzheimer's program will consist of four components, including (1) specialized staffing, higher staff-to-patient ratio, medical specialty support, and a full-time program director; (2) structured daily programming and specialized services such as dietary services; (3) a uniquely designed physical environment and an interior decor that promote "way-finding" and minimize environmental irritants; and (4) family support, education, and participation. Dr. William Reichel described Manor Care's proposed Alzheimer's program as "state of the art." The Alzheimer's program at Manor Care would give Lancaster County a greater variety of health services and prices for those services. Also, Manor Care's new facility, with a specialized Alzheimer's program and daily fees virtually the same as those of area nursing homes, will likely attract prospective nursing home residents to choose Manor Care over another nursing home. As an additional competitor in the Lancaster County market of long-term health services, which has a need of 120 beds, Manor Care will likely intensify price competition among providers of health care services in the area of nursing homes.

## CONCLUSION

Having reviewed the applicable requirements and criteria for a certificate of need, we conclude that Manor Care has met and satisfied its burden of proof for entitlement to a certificate of need. Accordingly, we affirm the judgment of the district court which affirmed the Certificate of Need Appeal Panel's order and decision that Manor Care satisfied the applicable requirements for issuance of a certificate of need.

## DENIAL OF A STAY

During oral arguments before this court, the parties agreed that Manor Care has taken no action with its proposed project notwithstanding any decision that Manor Care is entitled to a certificate of need.

We have said:

" ' "A moot case is one which seeks to determine an abstract question, which does not rest upon existing facts or rights. . . ." ' " "In general a case becomes moot ' "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." ' " "The province of a court is to decide real controversies and to determine rights actually controverted, and 'The judicial power does not extend to the determination of abstract questions.' " [Citations omitted.]

*Mullendore v. School Dist. No. 1*, 223 Neb. 28, 36, 388 N.W.2d 93, 99 (1986).

The question whether the district court abused its discretion by denying a stay on the issuance of a certificate of need is no longer a "live" issue because Manor Care has deferred construction, a situation the same as would have existed if a stay had been issued. Moreover, affirmance of the district court's judgment eliminates the necessity of examining the denial of the stay. Thus, whether the district court abused its discretion by denying a stay on the issuance of a certificate of need is rendered moot by our affirmance of the district court's judgment.

## SUMMARY

Manor Care has presented sufficient information for entitlement to a certificate of need under the Nebraska Health Care Certificate of Need Act, while the Department and objectors have failed to show any basis under the Administrative Procedure Act for altering the district court's judgment.

AFFIRMED.

HASTINGS, C.J., and CAPORALE, J., not participating.