AMERICAN BUSINESS INFORMATION, INC., ET AL., APPELLEES, V. MARY JANE EGR, STATE TAX COMMISSIONER, AND NEBRASKA DEPARTMENT OF REVENUE, APPELLANTS.

650 N.W.2d 251

Filed August 16, 2002.   No. S-01-470.

Don Stenberg, Attorney General, and L. Jay Bartel for appellants.

Richard P. Jeffries, of Kutak Rock, L.L.P., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
### NATURE OF CASE
The Nebraska Department of Revenue and State Tax Commissioner Mary Jane Egr appeal from an order of the district court for Lancaster County. At issue is whether sales of certain products by American Business Information, Inc., now known as infoUSA Inc. (ABI), are "sales of tangible personal property" under Neb. Rev. Stat. § 77-2734.14 (Reissue 1990).

### BACKGROUND
ABI provides comprehensive business data and products to other businesses to help those businesses find new customers. The data and products are derived from ABI's database, which contains entries from over 10 million businesses in the United States and Canada. The database is compiled using yellow page directories and other sources of public information. ABI also conducts telephone verification of its database to ensure that the database is accurate and up to date.

Using this database, ABI markets a number of customized and noncustomized products. Customized products include only businesses meeting criteria specified by the customer and are produced in the type of medium requested by the customer. Generally, customized products are priced on a per-name basis. Pricing varies according to the number of names supplied, the type of data delivered, and the medium on which the data is delivered. ABI distributes its products under agreements that grant customers a license to use ABI's products in the ordinary course of their businesses and prohibit the unauthorized reproduction of

ABI's products. The types of products marketed by ABI, and which are the subjects of this appeal, are described below.

The most basic product marketed by ABI is the prospect list. Prospect lists, which are customized products, are printed on 8½- by 11-inch paper and contain entries on individual businesses. The data reported include a business' name, address, telephone number, fax number, type of business, number of employees, sales volume, and other information. Prospect lists are typically three-hole-punched for use in a notebook binder. Prospect lists have a variety of marketing applications, including direct sales.

ABI also markets 3- by 5-inch index cards to its customers. Index cards are also customized products and contain the same data as prospect lists. On the back of each card, space is provided where comments may be written. Index cards are often used for telemarketing purposes because of the convenience of distributing them to numerous sales associates. Index cards were developed by ABI in response to customers' comments about the limitations of prospect lists.

ABI also provides business data via computer diskettes and magnetic tapes. Each of these media is a customized product. Each allows the customer to obtain the data the customer desires from ABI and then to format that data in the manner the customer chooses to produce its own reports, labels, cards, et cetera. The only difference between computer diskettes and magnetic tapes is that magnetic tapes are suitable for use on large mainframe computers.

CD-ROM's are noncustomized products. Each CD-ROM contains the entire ABI database, enabling customers to access and format the data they need. CD-ROM's are "metered" so that customers have access to only the number of records paid for by the customer.

ABI also delivers online data from its database by computer communications over telephone lines. Customers purchasing online data use computer equipment capable of receiving, interpreting, and storing an electronic signal transmitted by ABI. Customers are able to conduct their own search query and download data directly from ABI's database.

Two other products not at issue in this appeal, mailing labels and business directories, are also marketed by ABI. Business directories are bound volumes and are noncustomized products. Mailing labels are customized products and can be directly attached to brochures for direct mail use. ABI and the department have stipulated that sales of business directories and mailing labels are "[s]ales of tangible personal property" under § 77-2734.14(2).

During 1990 and 1991, ABI and its shareholders filed income tax returns which reflected their opinion that the sales of the aforementioned products were "[s]ales of tangible personal property" under § 77-2734.14(2). The department audited ABI for the 1990 and 1991 tax years and determined that ABI's sales were "other than sales of tangible personal property" under § 77-2734.14(3). Based on that determination, the department assessed deficiency notices to ABI for corporate income tax. During 1990 and 1991, ABI was organized as a subchapter S corporation, meaning that ABI's income was passed on to its shareholders on a proportional basis for taxation purposes. Thus, the department also assessed deficiency notices to ABI's shareholders for individual income taxes. ABI and its shareholders (hereinafter collectively referred to as "ABI") protested the department's deficiency assessments, which assessments the commissioner later sustained. ABI appealed the commissioner's decision to the district court for Lancaster County.

The district court reversed the commissioner's decision for two reasons. First, the district court concluded that it was not logical to conclude that the business directories and mailing labels were tangible personal property, as stipulated by the parties, while finding that ABI's remaining products were not. Second, the district court felt compelled to reverse the decision based on the language of *May Broadcasting Co. v. Boehm*, 241 Neb. 660, 490 N.W.2d 203 (1992). In *May Broadcasting Co.*, we stated, "The mere fact that [electronic] signals may be received and stored shows that a tangible thing is in issue. The concept of physically storing an intangible thing is beyond comprehension." 241 Neb. at 666, 490 N.W.2d at 207. The department and commissioner now appeal, and we moved the case to our docket

pursuant to our authority to regulate the docket of this court and the Nebraska Court of Appeals.

## ASSIGNMENT OF ERROR

The department and commissioner assign, rephrased, that the district court erred in finding that ABI's sales of business data products were "[s]ales of tangible personal property" under § 77-2734.14(2) rather than "[s]ales, other than sales of tangible personal property" under § 77-2734.14(3).

## STANDARD OF REVIEW

■ A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Big John's Billiards v. Balka*, 260 Neb. 702, 619 N.W.2d 444 (2000). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id.*

■ Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Id.*

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Id.*

## ANALYSIS

The income derived from the sales of ABI's products is apportioned to Nebraska pursuant to § 77-2734.14. That section provides in relevant part:

> (1) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales everywhere during the tax period.

(2) Sales of tangible personal property are in this state if:
. . . .

(3) Sales, other than sales of tangible personal property, are in this state if . . . .

Thus, the statute distinguishes between sales of tangible personal property and sales of other than tangible personal property when apportioning income to Nebraska. Because of other stipulated facts unimportant to our decision, the apportionment of ABI's income hinges on whether the sales of the prospect lists, 3- by 5-inch index cards, computer diskettes, magnetic tapes, CD-ROM's, and online information are sales of tangible personal property under § 77-2734.14(2), or whether they are sales of other than tangible personal property under § 77-2734.14(3).

In support of their argument that the sales of ABI's products are sales of other than tangible personal property, the department and commissioner cite a number of cases from other states. See, e.g., *Fingerhut Products Co. v. Commissioner of Revenue*, 258 N.W.2d 606 (Minn. 1977); *Spencer Gifts, Inc. v. Taxation Div. Director*, 182 N.J. Super. 179, 440 A.2d 104 (1981); *Dun & Bradstreet, Inc. v. City of New York*, 276 N.Y. 198, 11 N.E.2d 728 (1937); *Commerce Union Bank v. Tidwell*, 538 S.W.2d 405 (Tenn. 1976); *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166 (Tex. 1977); *Janesville Data Center v. Dept. of Revenue*, 84 Wis. 2d 341, 267 N.W.2d 656 (1978). The courts in each of these cases concluded that under the law of the respective state, sales of products similar to the products sold by ABI were not sales of "tangible personal property." Instead, the courts concluded that the object or essence of the sale was the sale of intangible information and that the physical medium which conveyed that information was merely incidental or inconsequential to the transaction.

Upon review of these cases, we conclude that the department and commissioner's emphasis on them is misplaced. In each of these cases, the respective state courts inquired into the meaning of the term "tangible personal property" and interpreted that term under state law. However, in the present case, we are required to interpret that term consistent with the meaning given to it under federal law. In addition, we conclude that *May Broadcasting Co. v. Boehm*, 241 Neb. 660, 490 N.W.2d 203

(1992), which the district court relied on in this case, is not directly applicable because in *May Broadcasting Co.*, we were not required to interpret the relevant provisions of Nebraska use tax under federal law, unlike the present case. However, as discussed below, we find the reasoning of *May Broadcasting Co.* to be applicable to our analysis.

The Legislature has directed that the term "tangible personal property," as used in § 77-2734.14,

> shall have the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required. Any reference to the laws of the United States shall mean the provisions of the Internal Revenue Code of 1986 . . . .

Neb. Rev. Stat. § 77-2714 (Reissue 1996). Thus, we consider the meaning of the term "tangible personal property" under the Internal Revenue Code of 1986.

In *Norwest Corp. & Subs. v. Commissioner*, 108 T.C. 358 (1997), the U.S. Tax Court considered whether computer software was tangible personal property or intangible personal property for purposes of federal investment tax credits. In that case, the taxpayer purchased computer software written on magnetic disks and tapes. The taxpayer's purchase entitled it to use the software on a nonexclusive, nontransferable basis for an indefinite or perpetual term. The taxpayer did not purchase any intellectual property rights in the software, nor did the taxpayer purchase the right to reproduce the software outside of its affiliated corporations.

The Tax Court held that the software was tangible personal property. Relying primarily on legislative history to reach this conclusion, the Tax Court stated that the "explicit legislative intent to define broadly the term 'tangible personal property' suggests that the term may encompass all personal property that is not intangible property in the narrow, traditional sense; i.e., rights and obligations created by law." *Id.* at 374-75.

> Intangible intellectual property rights and the tangible or physical manifestations or embodiments of those rights are distinct property interests. . . . A purchaser of a particular tangible manifestation or embodiment of intellectual property acquires only property rights in that manifestation

or embodiment and does not acquire any rights to the underlying intellectual property.

(Citation omitted.) *Id.* at 375.

This distinction between the acquisition of intellectual property rights and the acquisition of a license to use the physical embodiment of intellectual property leads us to conclude that the products sold by ABI constitute tangible personal property. ABI distributes its products under agreements that grant customers a license to use ABI's products in the ordinary course of their businesses. Those agreements also contain terms and conditions prohibiting the unauthorized reproduction of ABI's products. ABI's customers acquired no intangible intellectual property rights when purchasing ABI's products.

In *Norwest Corp. & Subs.*, it was important to the Tax Court's reasoning that the magnetic disks and tapes at issue in that case had a tangible, physical manifestation or embodiment. However, an online data product similar to that in the present case was not at issue in *Norwest Corp. & Subs.* In the present case, it is clear that the prospect lists, the 3- by 5-inch index cards, the computer diskettes, the magnetic tapes, and the CD-ROM's sold by ABI have a tangible, physical manifestation or embodiment. Less clear is whether the online data sold by ABI has a tangible, physical manifestation or embodiment. However, in *May Broadcasting Co. v. Boehm*, 241 Neb. 660, 490 N.W.2d 203 (1992), this court considered whether syndicated programming purchased by a broadcaster and transmitted to the broadcaster via electronic signals was tangible personal property subject to use tax. This court concluded that it was and, in the process, stated: "A transmission by satellite is the transmission of a tangible thing—an electronic signal. The mere fact that the signals may be received and stored shows that a tangible thing is in issue. The concept of physically storing an intangible thing is beyond comprehension." *Id.* at 666, 490 N.W.2d at 207. By the same reasoning employed in *May Broadcasting Co.*, we conclude that ABI's delivery of online data electronically over telephone lines "is the transmission of a tangible thing." We therefore conclude that the sale of each of the business products at issue in the present case is a sale of "tangible personal property" under § 77-2734.14(2).

## CONCLUSION

The sales of business data products by ABI are "[s]ales of tangible personal property" under § 77-2734.14(2). Thus, the decision of the district court is affirmed.

AFFIRMED.